IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JERRY EICHERT,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL EWP, INC., AUDEY MURRAY, AND NATIONAL EWP, INC.'S XYZ INSURANCE COMPANY DEFENDANTS numbers 1-5,<br><br>Defendants. | CV 16–15–M–DLC<br><br>ORDER<br><br>**FILED**<br>JUL 0 5 2016<br>Clerk, U S District Court<br>District Of Montana<br>Missoula |

Plaintiff Jerry Eichert ("Eichert") brings this action alleging that Defendants National EWP, Inc. ("National") and Audey Murray ("Murray") (collectively "Defendants") are liable for injuries sustained during a car accident. Defendants removed the case to this Court from the Montana Fourth Judicial District Court, Missoula County. Pending before the Court are Plaintiff's motion to remand and Defendants' motions to dismiss. For the reasons that follow, the Court will grant the motion to remand and deny the motions to dismiss as moot.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case involves two workmen injured in a Nevada auto accident while driving to work. Jose Cabrera ("Cabrera") and Eichert were employed by National

-1-

as assistant drillers at the Round Mountain Gold Mine near Tonopah, Nevada. National also employed Murray as the drilling supervisor at the gold mine. National is involved with drilling operations at mines throughout the western United States.

In November 2013, Eichert flew with Murray from Montana to Las Vegas, Nevada. Murray had already secured a hotel room for himself in Tonopah, Nevada, which was the closest town to the gold mine. Eichert was unable to find a vacant hotel room in Tonopah, so Murray drove Eichert from the Las Vegas airport to a hotel in Goldfield, Nevada, about 25 miles from Tonopah. Cabrera was also staying at the hotel in Goldfield.

Murray drove a National company truck to and from his hotel to the Round Mountain Gold Mine. National did not provide Cabrera or Eichert with a company vehicle. Instead, Cabrera drove his own, older truck, with high mileage and mechanical problems, to and from the Goldfield hotel and work. Eichert carpooled with Cabrera, as Eichert did not have a vehicle for transportation.

From November to December 2013, Murray asked Cabrera and Eichert to drive from their hotel in Goldfield to meet him at his hotel in Tonopah. Then, the three employees would ride together in Murray's company truck from Tonopah to the Round Mountain Gold Mine. National paid Cabrera and Eichert $10 per hour

for their travel time. Eichert alleges that National and Murray had knowledge of mechanical problems with Cabrera's personal vehicle. Cabrera's vehicle leaked antifreeze and would cut out and smoke while driving from Goldfield to Tonopah. National paid for additional antifreeze and gas for Cabrera's truck. In the past, National had also removed some of Cabrera's driving privileges because of concerns about his driving. Eichert claims that he requested a National work truck from Murray to drive to and from the hotel in Goldfield, but was refused.

On December 3, 2013, Cabrera drove himself and Eichert from their hotel in Goldfield to meet Murray in Tonopah. It was cold, snowing, and the roads were icy. Cabrera lost control of his truck, went off the road, and rolled the vehicle several times. Eichert lost consciousness and broke his neck. He was taken by ambulance to the Tonopah hospital and then life flighted to Las Vegas, where he was diagnosed with severe injuries including: skull fractures, a fractured cervical vertebrae, an orbital fracture, and traumatic brain injuries. Thereafter, Eichert underwent spinal fusion surgery in Montana. Eichert is now disabled and unable to work.

Eichert applied for workers compensation, but National denied coverage based on its conclusion that the auto accident occurred outside the scope of Eichert's employment. Eichert maintains that his medical bills are around

$200,000 and he was earning approximately $100,000 to $120,000 per year while employed with National. Eichert received only $15,000 liability insurance from Cabrera.

After receiving refusal at the administrative level for his workers' compensation claim, Eichert brought tort claims against National and Murray in Montana state court, alleging: (1) negligence under the doctrine of respondeat superior; (2) negligence for failure to secure Eichert with safe travel arrangements to work; (3) failure of National to provide adequate insurance coverage for its employees traveling to work; and (4) a declaratory judgment to require National to disclose its insurance companies or policies that may provide coverage for Eichert.

National removed the case to the United States Federal Court for the District of Montana, Missoula Division, on January 27, 2016. National and Murray then both moved to dismiss the action for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Eichert then followed these motions by moving to remand his case back to Montana state court.

At the same time as these civil proceedings, Eichert has continued litigating his workers' compensation claim in Nevada. On October 16, 2015, Eichert petitioned the First Judicial District Court of the State of Nevada ("Nevada district court") for judicial review of the prior administrative decision denying his

workers' compensation claim. On May 20, 2016, the Nevada district court affirmed the underlying administrative decision denying coverage and found that Eichert was not in the course and scope of his employment when he was injured. He appealed the Nevada district court's decision to the Supreme Court of Nevada on June 15, 2016.[1]

**ANALYSIS**

Because there are competing motions to remand and dismiss pending before the Court, the motion to remand will be addressed first to determine whether this Court has jurisdiction over this dispute. Charles Alan Wright et al., *Federal Practice and Procedure* vol. 14C, § 3739, 752–758 (3d ed., West 2005) (providing that a "district court must be certain that federal subject-matter jurisdiction is proper before entertaining a defendant's motion under Federal Civil Rule 12 to dismiss the plaintiff's complaint for failure to state a claim upon which relief can be granted").

**I. Motion to Remand**

As stated above, Eichert moves for remand following Defendants' removal of this case from the Montana state district court. A defendant may remove an action from state court only if the action could have been brought in the federal

---

[1] Defendants move the Court to take judicial notice of this appeal. (Doc. 23.) This motion is unopposed. As such, the Court finds good cause for the motion and it will be granted.

district court originally. 28 U.S.C. § 1441(a); *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 641 (9th Cir. 1989). Absent diversity jurisdiction, whether an action may be removed depends on the presence or absence of a federal question. *See* 28 U.S.C. § 1441(b). The burden of establishing federal jurisdiction falls on the party seeking removal, and where there is doubt about the right to remove, the case should be remanded to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (describing the "strong presumption against removal jurisdiction").

Defendants contend that removal was proper and argue that diversity jurisdiction exists because Murray, a Montana citizen, was fraudulently joined in this action. Fraudulent joinder is an exception to the requirement of complete diversity. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Id.* (citing *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987)). Because Murray is considered a Montana citizen for purposes of diversity jurisdiction, his presence in

the lawsuit defeats diversity jurisdiction unless he was fraudulently joined. *Morris*, 236 F.3d at 1067. Thus, in order to determine if Murray was fraudulently joined, the Court must determine whether Eichert states a viable claim against him.[2]

Count Two of the Complaint alleges a claim of negligence against Murray and National under the theory of respondeat superior. Under Montana law, to establish a claim of negligence, a plaintiff must prove four elements: (1) duty; (2) breach of duty; (3) causation; and (4) damages. *Dulaney v. State Farm Fire and Cas. Ins. Co.*, 324 P.3d 1211, 1214 (Mont. 2014). Further, in order to establish a claim of negligence through the doctrine of respondeat superior, a plaintiff must show that the negligent employee was "acting within the scope of his or her duties to the employer" when the negligent act was committed. *Bowyer v. Loftus*, 194 P.3d 92, 93 (Mont. 2008) (citations omitted). Generally, "whether an act was within the scope of employment is generally a question of fact." *Id.*

---

[2] Because this case was filed in Montana, and is based on events that arguably pertain to Nevada, it is not clear whether the Court should apply Nevada or Montana law to the underlying motions. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law."). However, Defendants argue that a formal choice of law analysis is not necessary in this case "because the outcome is the same under both Montana and Nevada law." (Doc. 6 at 8–9 (citing *Frontline Processing Corp. v. First State Bank of Eldorado*, 2002 U.S. Dist. LEXIS 28651 at *24 (D. Mont. Aug. 23, 2002).) The Court agrees with Defendants because, as discussed below, it does not appear that either Nevada or Montana law preclude Eichert's claims and thus a choice of law analysis is not needed at this time.

The above standards are similar to Nevada law. Like Montana, a plaintiff alleging negligence under Nevada law must prove "(1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009). Further, "an actionable claim on a theory of respondeat superior requires proof that (1) the actor at issue was an employee, and (2) the action complained of occurred within the scope of the actor's employment." *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1179 (Nev. 1996). Additionally, like Montana, "the trier of fact determines whether an employee was acting within the scope of his or her employment when the tortious act occurred." *Kornton v. Conrad, Inc.*, 67 P.3d 316, 317 (Nev. 2003) (citation and quotation marks omitted).

Here, Eichert's Complaint alleges that Murray, his supervisor and an employee of National, knew that Cabrera's vehicle was unsafe and in violation of National's safety policies. Further, as alleged in the Complaint, Murray required Eichert to travel with Cabrera even though it was foreseeable that Eichert could be injured in an accident. Eichert further provides that both National and Murray benefitted from this situation. The Court finds that these allegations are sufficient to state a claim of negligence under the doctrine of respondeat superior pursuant to

either Montana or Nevada law.[3]

Defendants counter that these claims fail under both Montana and Nevada law for two reasons. First, Defendants maintain that the workers' compensation systems in both Nevada and Montana provide the exclusive remedy for Eichert's claims against his employer and, as a result, he cannot bring those claims outside that system. Second, even if the workers' compensation systems were not the exclusive remedy, Eichert cannot bring a claim against Murray because, as the Nevada court found, Eichert was not acting within the course and scope of his employment when he was injured. Because he was not within the course and scope of his employment, Defendants argue, Murray did not have a duty to Eichert. Defendants are mistaken as to both arguments.

Defendants are correct that the Montana Workers' Compensation Act ("WCA") generally provides the exclusive remedy for an injury incurred in the workplace through negligence or accident. *Walters v. Flathead Concrete Products, Inc.*, 249 P.3d 913, 916 (Mont. 2011) (citing *Sitzman v. Shumaker*, 718 P.2d 657, 659 (Mont. 1986) ("Common law damages are not available under [the WCA] for injuries negligently or accidentally inflicted by an employer.

---

[3] The question remains, however, whether Murray was in the scope of his employment when he directed Eichert to travel with Cabrera. However, this is a factual question that must be resolved by the trier of fact. *Bowyer*, 194 P.3d at 93; *Kornton*, 67 P.3d at 317.

Negligence claims should be dismissed on this ground."). However, this remedy is only exclusive if the "employer provides coverage under the Workmen's Compensation Laws of this state." *Walters v. Flathead Concrete Products, Inc.*, 249 P.3d 913, 916 (Mont. 2011) (quoting Mont. Const. art. II, § 16). Importantly, the exclusivity of Montana's workers' compensation system is based on the concept of quid pro quo. *Id.* As explained by the Montana Supreme Court:

> The purpose of the [WCA] is to protect both the employer and the employee by incorporating a quid pro quo for negligent acts by the employer. The employer is given immunity from suit by an employee who is injured on the job in return for relinquishing his common law defenses. The employee is assured of compensation for his injuries, but foregoes legal recourse against the employer.

*Id.* (quoting *State Farm Fire & Cas. Co. v. Bush Hog, LLC*, 219 P.3d 1249 (Mont. 2009)). Thus, "[a]bsent the quid pro quo, the exclusive remedy cannot stand, and the employer is thus exposed to potential tort liability." *Stratemeyer v. Lincoln County*, 915 P.2d 175, 180 (Mont. 1996).

Here, because Eichert has not been compensated by his employer for the injuries allegedly suffered on the job, there has been no quid pro quo and Montana's workers' compensation system does not preclude his claim. Defendants are exposed to potential tort liability under Montana law.

Similarly, Nevada's workers' compensation system is also based on the concept of quid pro quo. *Meers v. Haughton Elevator, a Div. of Reliance Elec.*

*Co.*, 701 P.2d 1006, 1007 (Nev. 1985) ("The reason for the employer's immunity is the quid pro quo by which the employer gives up his normal defenses and assumes automatic liability, while the employee gives up his right to common-law verdicts."). Further, like Montana's system, Nevada's workers' compensation system is only exclusive if the employee has been compensated for his injuries by the employer. *See Nevada Power Co. v. Haggerty*, 989 P.2d 870, 874 (Nev. 1999) ("As a general rule, an employer who provides compensation to an injured employee under the NIIA[4] is insulated from further liability to that employee."); *see also Oliver v. Barrick Goldstrike Mines*, 905 P.2d 168, 171 (Nev. 1995) ("Under Nevada law, every employer . . . must 'provide and secure' compensation for injured employees. In return for providing such compensation, employers enjoy the benefits of the exclusive remedy and immunity provisions under [NIIA].") (citations omitted).[5] Accordingly, because National did not compensate

---

[4] The "NIIA" is an abbreviation for Nevada Industrial Insurance Act, which is the act that codified Nevada's workers' compensation system.

[5] The Court notes, however, that this finding is made exclusively in the context of the Court's analysis of fraudulent joinder and whether Eichert's claim is obviously precluded by Nevada law. For example, *Conway v. Circus Circus Casinos, Inc.*, 8 P.3d 837 (Nev. 2000), which Defendants cite in support of their argument, appears at first blush to preclude Eichert's claim. However, a close reading of this case reveals a factually different scenario than the one at bar. Importantly, the plaintiffs in *Conway*, unlike Eichert, were never initially denied workers' compensation coverage. *See id.* In fact, the *Conway* court specifically concluded that the injuries sustained by the plaintiff-employees came "within the purview of the NIIA" and thus their claim was limited to the remedies provided under it. *Id.* at 841. Defendants thus fail to cite any case law for the argument that an injured worker who has been denied relief under the NIIA is also precluded from bringing a common law negligence claim against his employer under the

Eichert for his injuries, Nevada's workers' compensation system does not appear to preclude him from bringing his negligence claims under Nevada law.

Additionally, as discussed above, Defendants contend that Murray did not owe a duty to Eichert. Defendants provide no authority for this argument. Importantly, however, Defendants' argument appears to hinge on the Nevada district court's finding that Eichert was not within course and scope of his employment when he was injured. The court based its decision on *Jourdan v. State Indus. Ins. System*, 853 P.2d 99 (Nev. 1993), which dealt with the scope of employment in the context of worker' compensation laws. *See Jourdan,,* 853 P.2d at 102 (relying on a express preclusion in Nevada's workers' compensation laws for the finding that an employee who is injured while commuting to work is precluded from receiving workers' compensation coverage because he received a travel stipend for the commute as opposed to hourly wages). Thus, because the Nevada district court ruled expressly on the issue of scope of employment in the context of workers' compensation laws, it is not obvious that Eichert fails to state a common law negligence claim under Nevada law.[6]

To further undermine Defendants' argument, Nevada recognizes that a duty

---

doctrine of respondeat superior.

[6] The Court comes to the same conclusion under Montana law. *See Peyatt v. Moore*, 102 P.3d 535, 540 (Mont. 2004) (employers have a duty to ensure worker safety, regardless of workplace).

to control the dangerous behavior of others can arise when: "(1) a special relationship exists between the parties or between the defendant and the identifiable victim, and (2) the harm created by the defendant's conduct is foreseeable." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280–1281 (Nev. 2009) (citation omitted). Further, Nevada recognizes a special relationship between an employer and employee. *Id.* at 1284 (citations omitted).

Factual questions remain, however, including whether: (1) an employer-employee relationship existed between Defendants and Eichert at the time of the accident; and (2) whether Murray knew that Cabrera's vehicle was unsafe and potentially dangerous, but made Eichert travel with him anyway. Further, it is not clear whether Eichert's claim is precluded by some other equitable barrier, such as res judicata or collateral estoppel. Nonetheless, the question at bar is a narrow one: Is Eichert's claim obviously precluded under both Montana and Nevada law? The Court finds that Defendants fail to show that is obviously barred and will grant the motion to remand. Because the Court will remand this case back to the Montana district court, the Court lacks jurisdiction to rule on the motions to dismiss and will deny them as moot. Although the Court is granting the motion to remand, this is not a situation where an award of attorneys' fees in favor of Eichert is warranted, and thus the request for attorneys' fees is denied.

Accordingly, IT IS ORDERED that:

(1) Defendants' Motion for Judicial Notice (Doc. 23) is GRANTED.

(2) Plaintiff Jerry Eichert's Motion to Remand (Doc. 10) is GRANTED. The Clerk of Court shall remand this case back to the Montana Fourth Judicial District Court, Missoula County.

(3) Defendants' Motions to Dismiss (Docs. 5, 7) are DISMISSED as moot.

DATED this 5th day of July, 2016.

*Dana L. Christensen*
Dana L. Christensen, Chief Judge
United States District Court